UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA DAVIS,

    Plaintiff,

v.                                      Case No:   8:14-cv-3104-T-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

OPINION AND ORDER

Plaintiff Linda Davis seeks judicial review of an administrative decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security disability insurance benefits ("DIB"). The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

I.    Issues on Appeal

Plaintiff raises three interrelated issues on appeal:[1] (1) whether substantial evidence supports the finding of Administrative Law Judge Elving L. Torres (the "ALJ") at step two that Plaintiff's mental impairments were not severe; (2) whether

---

[1] Any issue not raised by the Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.,* 507 F. App'x 855, 856 (11th Cir. 2013).

the ALJ's residual functional capacity ("RFC") finding erroneously failed to account for Plaintiff's mental limitations; and (3) whether the hypothetical the ALJ posed to the vocational expert ("VE") properly included Plaintiff's limitations, specifically her mental impairments. Because the decision of the Commissioner is supported by substantial evidence and Plaintiff has not shown any reversible error, the Court will affirm the ALJ's decision on all issues.

## II.  Procedural History and Summary of the ALJ's Decision

On March 1, 2011, Plaintiff protectively filed an application for DIB alleging she became disabled on February 1, 2010 because of back problems and a back injury. Tr. 182-184, 209. The Social Security Administration ("SSA") denied her applications initially and upon reconsideration. Tr. 120-21, 134-39, 145-50. Plaintiff then requested and received a hearing before the ALJ on March 20, 2013, during which she was represented by an attorney. Tr. 31-65. Plaintiff and a VE, Dr. Easton, appeared and testified at the hearing. Tr. 31-65.

On April 30, 2013, the ALJ issued his decision, finding Plaintiff not disabled and denying her claim. Tr. 16-26. The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2012. Tr. 18. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from February 1, 2010, the alleged onset date, through June 30, 2013, the date last insured. *Id.* At step two, the ALJ determined that Plaintiff had "the following severe impairments: obesity; lumbar spine degenerative disc disease with disc protrusions, foraminal narrowing, and degenerative changes at

multiple levels; mild C6 radiculopathy and degenerative changes with stenosis and borderline carpal tunnel syndrome, bilaterally, episodic migraine headaches; and moderate osteoarthritis." *Id.*

In doing so, the ALJ specifically considered Plaintiff's medically determinable mental impairments of anxiety and depression and found that "considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere." *Id.* In making his finding, the ALJ considered the four broad functional areas set out in the regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments, the so-called "paragraph B" criteria.[2] In the first functional area of daily living, the ALJ determined that Plaintiff has mild limitation. *Id.* Although the ALJ noted Plaintiff's hearing testimony that pain, headaches and other symptoms of Plaintiff's physical impairments interfere with her ability to perform household chores and other activities of daily living, he further observed that Plaintiff did not allege restrictions on activities of daily living related to her mental impairments. Tr. 18-19. The ALJ discussed the June 16, 2011 psychological evaluation of Dr. Richard Belsham, Ph.D., in which Plaintiff reported that she is able to attend to personal hygiene needs, cook, drive and shop for groceries. Tr. 19, 357-60. The ALJ further discussed the opinion of Dr. Linda O'Neil, Ph.D., who reviewed Dr. Belsham's opinion and the record and concluded Plaintiff has only a mild limitation in the functional area of activities of daily living relating to mental impairments. Tr. 19, 486-99.

---

[2] 20 C.F.R., Part 404, Subpart P. Appendix 1.

In the next functional area, social functioning, the ALJ also found that Plaintiff has mild limitation. Tr. 19. Noting that Plaintiff testified that she cries a lot and becomes agitated when under stress, the ALJ observed during the hearing that Plaintiff "remained calm and composed. *Id.* She was cooperative and responsive to questions, and her eye contact was appropriate. Not once did the undersigned observe her exhibiting any notably abnormal or distracting behaviors." *Id.* The ALJ noted in Dr. Belsham's examination on June 16, 2011, he observed Plaintiff "'maintain[] good eye contact throughout the interview, her speech was normal, and her attitude towards the examiner was cooperative.'" *Id.*, Tr. 357. Although the ALJ noted that Dr. Belsham reported that Plaintiff could appear "anxious, depressed and tearful," her "overall mood was pleasant." *Id.* After Dr. O'Neil's review of Dr. Belsham's report and record, the ALJ noted she concluded that Plaintiff has a mild limitation in the functional area of social functioning. Tr. 19. Based on Plaintiff's testimony, observations of the Plaintiff during the hearing and a "thorough review of the record," the ALJ found that Plaintiff has a mild limitation in the functional area of social functioning. *Id.*

In the third functional area of concentration, persistence or pace, the ALJ found that Plaintiff has mild limitation. *Id.* The ALJ discussed Plaintiff's hearing testimony, in which she stated that she gets agitated and stressed, but noted that Plaintiff did not allege any specific limitations in the area of concentration, persistence, or pace. *Id.* The ALJ further observed during that hearing that Plaintiff remained "fully focused and attentive. . . . understood all questions and

provided appropriately detailed answers. Not once did the undersigned observe a lapse in the claimant's concentration." *Id.* Further, the ALJ noted that Dr. Belsham found in his June 2011 examination that Plaintiff "appears capable of following simple instructions and for the most part complex instructions," noting, however, Dr. Belsham also found that Plaintiff's "ability to maintain attention and concentration appears variable." *Id.*, Tr. 359. Dr. O'Neil concluded, after review of Dr. Belsham's report and the record, that Plaintiff has a mild limitation in the functional area of concentration, persistence, or pace. Tr. 371. Based on Plaintiff's testimony, the ALJ's observations during the hearing and her review of the record, the ALJ concluded that Plaintiff has a mild limitation in the functional area of concentration, persistence, or pace. Tr. 19.

In the fourth functional area of episodes of decompensation, the ALJ found that Plaintiff had experienced no episodes of decompensation of an extended duration. *Id.* Dr. O'Neill arrived at the same conclusion after her review. Tr. 371. Accordingly, the ALJ concluded: "because the claimant's medically determinable mental impairments caused no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they were non-severe." Tr. 19-20.

At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 20. The ALJ then determined that Plaintiff had the RFC to perform light work as defined in 20

C.F.R. § 404.1567(b), with some additional limitations: "occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds, or exposure to unprotected heights; gross and fine manipulation limited to frequent as opposed to constant or repetitive; must avoid extensive exposure to extreme bright sunlight, and preferably limited to performing indoor activities; and must avoid extreme noise environment exposure." *Id.* The ALJ also found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 22.

Next, at step four, the ALJ posed the following hypothetical to the VE, and asked if such a person could perform any of Plaintiff's past occupations:

> Dr. Easton, assuming a hypothetical individual limited to light level of exertion, with limitation to occasional climbing, balancing, stooping, kneeling, crouching and crawling. No climbing ladders, scaffolds, ropes or at open heights. Assuming that gross and fine manipulation will be limited to frequently, as opposed to constant or repetitive. Assuming that must avoid extensive exposure to extreme bright sunlight and preferably will be limited to indoor activities as a result, but still without extreme noise, environmental exposure. Could such a hypothetical person perform any of the claimant's past occupations as the claimant actually performed it or as generally performed in the economy?

Tr. 59-60. The VE responded in the negative. Based on the testimony of the VE, the ALJ determined that Plaintiff was unable to perform any of her past relevant work as a house cleaner, cashier or fast food worker. Tr. 24. Next, the ALJ asked the VE:

> Now, assuming a hypothetical younger individual with a limited education and assuming limited to a wide range of light level of exertion, with the other restrictions already mentioned, is there any work that such a hypothetical individual could perform?

Tr. 60. The VE said there would be and provided examples of representative jobs Plaintiff could perform. Thus, at step five, also based on the testimony of the VE and considering Plaintiff's age,[3] education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as ticket seller, ticket taker and hand packager. Tr. 24-25. In addition, the ALJ found that based on the VE's testimony, Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy." Tr. 25. Thus, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from February 1, 2010 through June 30, 2012. *Id.*

Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council, which was denied on October 22, 2014. Tr. 1-6. Accordingly, the April 30, 2013 decision is the final decision of the Commissioner. On December 12, 2014, Plaintiff timely filed her Complaint with this Court. Doc. 1.

---

[3] Plaintiff was born in 1964. Tr. 25.

III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner, 2015 WL 1453364* at *2 (11th Cir. 2015), *citing Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971).

IV. Analysis

    A. *The ALJ's Determination of the Severity Plaintiff's Mental Impairments at Step Two*

Plaintiff states that the ALJ improperly found her mental limitations of anxiety and depression to be non-severe, asserting substantial evidence supports otherwise. Doc. 24 at 6-8. Defendant responds that the argument lacks merit because there is no evidence in the record showing Plaintiff's anxiety and depression significantly affected her ability to perform basic work activities. The Court, having reviewed the record, the applicable law and the decision of the ALJ, agrees with the Commissioner.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff bears the burden of establishing that her impairments are severe and prevent the performance of her past relevant work. *Bowen v. Yuckert*, 482 U.S. 146 at 146 n.5 (1987). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The Social Security Regulations provide that an "impairment or combination of impairments is not severe if it does not significantly limit your . . . . mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities mean "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1521(b). Examples of mental requirements set forth in the regulations include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work-setting. *Id.* § 404.1521(b)(3)-(6).

In order to evaluate the severity of a mental impairment, the Commissioner's regulations require the application of a "special technique," which the ALJ applied in this case. 20 C.F.R. § 404.1520a; *see* Tr. 18-20. Under the special technique, the

ALJ will rate the degree of functional limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The degree of limitation in the first three areas are rated on a five point scale of none, mild, moderate, marked, and extreme; and the fourth area is rated as none, one or two, three, four or more. 20 C.F.R § 404.1520a(c)(4). Once the degree of limitation in each area is determined, if the degree of limitation in the first three functional areas is none or mild and the fourth area is none, the ALJ generally will find, as he did here, the impairment is not severe, unless the evidence otherwise indicates more than a minimal limitation in ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). The ALJ's decision must incorporate findings and conclusions based on the special technique. 20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined that the only severe impairments Plaintiff suffered from were physical limitations: obesity; lumbar spine degenerative disc disease with disc protrusions, foraminal narrowing, and degenerative changes at multiple levels; mild C6 radiculopathy and degenerative changes with stenosis and borderline carpal tunnel syndrome, bilaterally, episodic migraine headaches; and moderate osteoarthritis. Tr. 18. As discussed in detail earlier in this opinion,[4] the ALJ specifically considered Plaintiff's alleged mental impairments of depression and anxiety and determined they did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. Tr. 18-20. The ALJ applied the

---

[4] *See supra* pp. 3-5.

special technique and considered the four broad functional areas set out in the regulations for evaluating mental disorders. *Id.* The ALJ found only mild limitation in Plaintiff's activities of daily living; social functioning; and concentration, persistence or pace. He found no episodes of decompensation of extended duration. *Id.* Based on these findings, the ALJ determined that Plaintiff's mental impairments were non-severe. Tr. 19-20.

There is very little record evidence concerning Plaintiff's mental impairments: primarily the psychological evaluation of examining psychologist Richard Belsham, Ph.D., dated June 16, 2011 (Tr. 357-60) and the psychiatric review technique forms completed by two State Agency psychologists who reviewed Plaintiff's records, including those of Dr. Belsham, Thomas Clark, Ph.D., performed on July 7, 2011 (Tr. 361-74) and Linda O'Neil, Ph.D., dated October 4, 2011 (Tr. 486-99).

The ALJ discussed Dr. Belsham's report at length when he applied the special technique and considered the four broad functional areas. Tr. 18-20. Dr. Belsham examined Plaintiff in June 2011. Tr. 357-60. He described Plaintiff's overall mood as pleasant but noted that she was anxious, depressed, and tearful. Tr. 357. Dr. Belsham found that Plaintiff's thoughts were organized, her content was relevant, and no delusional thinking, paranoid ideation or hallucinations had been noted or reported. Tr. 357. Dr. Belsham also found Plaintiff's perception, insight, and judgment appeared normal, her abstract reasoning ability appeared intact and good, and that her intelligence appeared in the average range. *Id.* He further noted Plaintiff was oriented to time, place, and person and knew the name of the President,

and that Plaintiff's memory appeared intact. *Id.* Plaintiff told Dr. Belsham she stopped working due to her back, not mental impairments. Tr. 358-59. Plaintiff also told Dr. Belsham she is raising her 9-year old grandson. Tr. 358. Dr. Belsham opined that Plaintiff appeared "capable of following simple instructions and for the most part complex instructions" and her "ability to maintain attention and concentration appear[ed] variable." Tr. 359. Dr. Belsham found Plaintiff was adaptable and able to learn new material and could relate and act appropriately with others. *Id.* Dr. Belsham noted Plaintiff's "ability to deal with stress appears rather poor," but opined that Plaintiff was "able to seek and secure employment" and that her "[m]ental health issues appear to play more of a secondary role with regards to employment" *Id.*

As noted by the Commissioner, the ALJ's step two finding also is supported by the opinion of the State Agency psychologists, Dr. Thomas Clark and Dr. Linda O'Neil. Doc. 25 at 9; Tr. 361-74; 486-98. Thomas Clark, Ph.D., reviewed Plaintiff's records and, one month after Dr. Belsham's examination, completed a psychiatric review technique. Tr. 361-74. Dr. Clark noted no restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation Tr. 371. Dr. Clark also reviewed Plaintiff's records, including the report from Dr. Belsham, and concluded that Plaintiff's mental illness was very mild and imposed no more than mild restrictions on functioning, and that Plaintiff had good control of symptoms with medication. Tr. 373.

The ALJ also discussed Dr. O'Neil's findings in her opinion. Tr. 18-19. Dr. O'Neil reviewed Plaintiff's records and concluded Plaintiff's mental impairments of depression and anxiety were not severe. Tr. 486-498. Dr. O'Neil rated the degree of limitation resulting from Plaintiff's depression and anxiety in the four functional areas, concluding Plaintiff's limitations were mild in activity of daily living; social functioning; and concentration, persistence or pace. Tr. 496. Dr. O'Neil noted no episodes of decompensation. Tr. 496. Dr. O'Neil noted that Plaintiff mentioned anxiety, was on Xanax, and received counseling for a recent home invasion but that some anxiety related to the home invasion was reasonable and "not expected to last for an extended period of time." Tr. 498.

The Court finds that the ALJ's decision is supported by substantial evidence in the record. Plaintiff has submitted no evidence of severe mental limitations because of her depression or anxiety. *See* 20 C.F.R. § 404.1521(a) (an impairment not severe if it does not significantly limit your physical or mental ability to do basic work activities). Furthermore, no doctor has opined that Plaintiff's mental limitations are so debilitating as to preclude Plaintiff from working. Rather, the record shows the opposite. *See Wind v. Barnhart*, 133 Fed. App'x 684, 690-91 (11th Cir. 2005) (finding that ALJ did not err in finding that plaintiff's obesity was not a severe impairment where there was no evidence it affected plaintiff's ability to perform work activities).

As noted, there is minimal record evidence concerning Plaintiff's mental limitations, and, as observed by the ALJ, Plaintiff did not allege restrictions on her

daily activities or her concentration, persistence or pace related to mental impairments. Tr. 18-19. The majority of Plaintiff's medical visits were for treatment related to her physical impairments, in which she denied depression or anxiety, panic attacks, easy distractibility and an inability to concentrate. *See, e.g.,* Tr. 449, 465, 470, 475, 481, 512 (visits to Paul E. Beebe, M.D.). Plaintiff's records rarely mention mental limitations, and when they do, they are discussed in a positive vein. *See, e.g.,* Tr. 354, 517 (Dr. Beebe's examination concluding that Plaintiff was oriented to person, place and time with a normal mood and affect and that her form and content of thought were normal, her concentration and intelligence were normal and her judgment and insight were intact). Notes from Kevin L. Boyer, M.D., and Francisco Esparza, M.D., also support the ALJ's determination that Plaintiff's anxiety and depression were not severe. On February 4, 2010, Dr. Boyer noted Plaintiff's neurological exam was within normal limits. Tr. 422. On August 23, 2011, Plaintiff reported to Dr. Esparza that her PTSD had "improved tremendously" and that her mood was stable. Tr. 398. Overall, these reports do not discuss that Plaintiff had any limitations in her ability to function due to her mental limitation, nor was it a condition for which she sought treatment for. In fact, Plaintiff herself reported that it was her physical impairments and not her mental limitations that caused her to stop working. Tr. 81, 358-59.

Additionally, the ALJ found in Plaintiff's favor at step two of the sequential evaluation process by finding that she had multiple severe impairments. Tr. 18. The ALJ then proceeded with the other steps of the sequential evaluation process and

found Plaintiff could perform the range of work at all exertional levels with certain nonexertional limitations. Tr. 23. As the Eleventh Circuit has stated, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Thus, the ALJ's findings were not in error.

### B. The ALJ's Determination of Plaintiff's RFC

Plaintiff next argues the ALJ did not properly consider Plaintiff's mental limitations in determining her RFC, particularly Dr. Belsham's opinion concerning Plaintiff's stress, ability to maintain attention and concentration and ability to follow complex instructions. Doc. 24 at 8-9. Plaintiff asserts the ALJ should have incorporated into her RFC a limitation for "simple, routine, repetitive work." *Id.* The Court disagrees, and finds that the ALJ properly assessed Plaintiff's RFC.

The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, work experience and whether she can return to her past relevant work are considered in determining her RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon *all relevant evidence* of a claimant's ability to do work despite her impairments. *Phillips v. Barnhart*, 357

F.3d 1232, 1238 (11th Cir. 2004) (emphasis added); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)). Opinions on some issues, however, such as the claimant's RFC and whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); SSR 96-5p. Thus, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(d)(1).

Although Plaintiff singles out Dr. Belsham's opinion, an ALJ is required to assess Plaintiff's RFC based on all relevant evidence. *Phillips*, 357 F.3d at 1238. The Court finds the ALJ did so here with respect to Plaintiff's mental impairments. He discussed and considered Dr. Belsham's opinion and gave it "significant weight," although he did not adopt it in total. Tr. 24. He also considered Dr. O'Neil's psychiatric review technique, which found that Plaintiff's mental impairments created only a mild degree of limitation in her functional areas of activities of daily living, social functioning and concentration, persistence or pace. Tr. 23. Dr. O'Neill concluded Plaintiff had no severe mental impairments. Tr. 24. The ALJ likewise gave Dr. O'Neil's report significant weight. *Id.* Furthermore, as noted by the Commissioner, Plaintiff's own statements confirm that her ability to work was not limited by her mental impairments, but by her "physical problems." Tr. 81 (reporting "[Plaintiff] does not feel she has a disabling mental condition [and that i]f

not for her physical problems, she would be able to work"); Tr. 358-59 (reporting to Dr. Belsham Plaintiff stopped working because of her back issues and not mental impairments). Likewise, there is no evidence in the record to support Plaintiff's contention that she is limited in her ability to perform basic work activities because of her inability to deal with stress. Doc. 24 at 8-9. See SSR 85-15. As noted by the Defendant, while Dr. Belsham stated Plaintiff's ability to deal with stress was "poor," he did not opine that Plaintiff would need any restriction to low-stress work. Doc. 25 at 15, Tr. 359. On the contrary, as the ALJ discussed, Dr. Belsham stated Plaintiff appeared "able to seek and secure employment" and her "[m]ental health issues appear to play more of a secondary role with regards to employment." Tr. 24, 359. The ALJ further observed in the hearing that Plaintiff "remained calm and composed. She was cooperative and responsive to questions, and her eye contact was appropriate. Not once did the undersigned observe her exhibiting any notably abnormal or distracting behaviors." Tr. 19.

With respect to Plaintiff's ability to maintain attention and concentration, Dr. Belsham only described Plaintiff's ability as "variable." Tr. 359. Furthermore, the ALJ observed Plaintiff's demeanor at the hearing and noted that Plaintiff remained "fully focused and attentive . . . . understood all questions and provided appropriately detailed answers." Plaintiff's argument that she is limited by her ability to follow complex instructions (Doc. 24 at 9) also is unpersuasive, as the jobs that the ALJ (through the VE's testimony) found Plaintiff is capable of performing are unskilled jobs, which require "only the ability to understand, remember, and carry out simple

instructions." SSR 85-15. Under the applicable legal standards, the Court finds substantial evidence supports the ALJ's RFC determination.

### C. The ALJ's Hypothetical to the VE

Finally, Plaintiff's argues that the ALJ improperly failed to include all of Plaintiff's limitations, specifically her alleged mental impairments, in the hypothetical to the VE. Doc. 24 at 9-11. The Court disagrees. The ALJ determined Plaintiff's mental impairments were not severe and caused no more than minimal limitation in Plaintiff's ability to perform basic mental work activities. Tr. 27. As discussed in detail in this opinion, the ALJ came to this conclusion after evaluating each of the functional areas and the evidence of record. Tr. 23-24. Accordingly, because the ALJ properly determined that Plaintiff's mental impairments were non-severe, he was not required to include them in the hypothetical to the VE. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (a hypothetical question only need include the claimant's functional limitations that are supported by the record). Accordingly, the ALJ did not err in failing to include alleged limitations that he found were non-severe.

### V. Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 29th day of December, 2015.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record